**DEUTSCH v. HOGE et al.**

Civ. No. 5712.

United States District Court
N. D. Ohio, W. D.

Feb. 15, 1949.

Ned L. Mann, and Feighan, Feighan &
Mann, all of Cleveland, Ohio, Francis X.

Feighan, Cleveland, Ohio, of counsel, Saul
Corwin, New York City, for plaintiff.

George E. Taylor, and Taylor, Cruey &
Kelb, all of Toledo, Ohio, Wendland v.
Cruey, Toledo, Ohio, of counsel, Emmett
D. Lusk, Wapakoneta, Ohio, for defendants.

NEVIN, Chief Judge.

Plaintiff, at the time of filing his complaint herein was, and he still is, a citizen and resident of the State of New York. Defendants were and are citizens and residents of the State of Ohio, having their principal place of business in New Knoxville, Ohio, within the jurisdiction of this Court. The individual defendants are the sole owners of both the Hoge Brush Co., and The Hoge Lumber Co., (an Ohio corporation). It has been agreed between the parties that The Hoge Lumber Co., assume liability for any judgment which might be rendered in this case. In the interest of brevity, therefore, the defendants herein will be considered as a group and treated and referred to as "defendants" without differentiating between the businesses and the individuals.

The complaint, filed April 29, 1947, contains three causes of action. In the first cause of action, plaintiff sought damages which he claimed he sustained by virtue of the breach of an alleged contract with the defendants by which defendants agreed to manufacture and sell to plaintiff certain brushes as in this cause of action set forth. In the second cause of action, plaintiff sought to recover on an open account for the delivery of certain materials to the defendants and in the third cause of action, plaintiff sought to recover damages for the breach by defendants of an alleged contract to sell plaintiff certain brushes, different from and other than those set forth in his first cause of action.

In their answer filed June 18, 1947, defendants deny that any contract ever existed between plaintiff and defendants as set forth by plaintiff in his first cause of action, but allege further that if it should be ultimately determined that there was such a contract, that it would fall within the provisions of the Statute of Frauds

of both the States of Ohio and New York and that by reason thereof, any such contract would be of no legal effect and unenforceable.

As to the second cause of action, liability is admitted on the part of defendants except for some small items of negligible value, and except for alleged proper credits upon the account, it being defendants' position that on the second cause of action, they are indebted to plaintiff in a net balance of $938.38, for which amount they offered to confess judgment.

As to the third cause of action, defendants deny that any such contract as therein claimed ever existed between the parties and allege further that if there was any such contract, it was unenforceable by reason of the Statute of Frauds.

On May 6, 1948, the cause came on for trial before the court, without a jury. During the progress of the trial (defendants not objecting) on May 12, 1948, plaintiff was granted leave to, and did, amend his complaint by striking out paragraph 25 thereof, and substituting in lieu of the original paragraph 25, the certain allegations as in the amendment contained. Paragraph 25 was contained in plaintiff's second cause of action.

On May 12, 1948, there was also filed, a stipulation which recites that: "It is stipulated by counsel for the plaintiff herein that if recovery is had on the first cause of action, that the plaintiff is not and shall not be entitled to recover upon the second cause of action."

(This stipulation is reaffirmed by plaintiff in his brief wherein (p. 68) it is stated: "To sum it up, the defendants, in addition to the compensatory and special damages, owe the complainant * * * a total of $1372.32 plus interest at the rate of six percent from the date of the breach of the contract. If recovery is allowed upon the First Cause of Action, the total prayed for will include this sum".)

On May 18, 1948 (defendants not objecting) plaintiff was granted leave to amend his amended complaint by striking from the amended complaint paragraph 19 thereof in its entirety (paragraph 19 is contained in the first cause of action) and substituting in lieu thereof a paragraph "19" to read as follows: "19. That by reason of the premises the plaintiff has been damaged in the following respects, to-wit: (a) That if the Court should determine that a contract came into existence on March 17, that the plaintiff has been damaged in the sum of $41,022.09, which sum is comprised of the fair market value of the merchandise required to be delivered under the defendants' contract with the plaintiff in the sum of $31,332.64, and which sum likewise represents the extent of the plaintiff's liability to the United States Government by reason of his default under the contract aforementioned, plus the profit which he should have realized upon said contract in the sum of $6,425.36, plus advances of $2,-000.00 in cash against said contract, plus merchandise purchased for said contract in the sum of $1,264.09, but (b) If the Court should determine that a contract came into existence on March 27, then the plaintiff has been damaged in the sum of $34,596.73, which sum is comprised of the fair market value of the merchandise required to be delivered under the defendants' contract with the plaintiff in the sum of $31,332.64, and which sum likewise represents the extent of the plaintiff's liability to the United States Government by reason of his default under the contract aforementioned, plus advances of $2,000.00 in cash against said contract, plus the cost of raw material purchased for said contract in the sum of $1,264.09, no part of which sums have been paid, although duly demanded."

At the time plaintiff rested his case in chief, defendants moved for dismissal as to the first and third causes of action "separately as to each." This motion, the court overruled. At the conclusion of the trial and after both sides had rested, defendants renewed their motion made at the time plaintiff rested in chief, for the dismissal as to the first and third causes of action. This motion the court overruled as to the first cause of action, but sustained as to the third cause of action, saying, after setting forth its reasons

therefor, that "Under the evidence in this case, it is the view of the Court that as to the third cause of action, plaintiff has failed to sustain the burden which rests upon him and that defendants' motion to dismiss the third cause of action is well taken, and that it should be, and it is, sustained, and the third cause of action is here and now dismissed."

No further consideration, therefore, will be given to the third cause of action.

It is agreed by plaintiff that at the close of the entire case the position of plaintiff was not in all respects the same as that asserted by him in his complaint as filed. As to this, plaintiff in his brief (page 3 et seq.) makes, among others, the following statements: "It will be evident, immediately, to the Court that the final position of the complainant at the close of all of the testimony is somewhat different from that which he asserted at the time of the filing of the complaint. * * * The pleadings embrace his changed position. The facts set out in the complaint apprised the defendants, in the alternative, of the position now maintained. * * * It had been the alternative position of the complainant that a bilateral agreement was made by and between the defendants through their agent, and the complainant, and that they were bound to manufacture and sell at the prices quoted for the specific goods. * * * However, the complainant recognizes that he did not stand upon his rights in respect of such agreement. He voluntarily relinquished his rights, under Ohio law, when he agreed to place a new order on March 27, 1941. By the placing of this order, under the decisions of the Ohio courts, he is deemed to have waived the breach and thereafter entered into a substituted contract. * * * The present position of the complainant conforming it to the proof, is as follows: (1) That the complainant, by his order of March 27, 1941 offered to purchase the various goods required to be manufactured under and in accordance with the Navy contract. (2) That there was a specific and express assent by the defendants to said offer to purchase. (3) That there was an assent as a matter of law to said offer to purchase. (4) That the defendants are estopped to deny the existence of the contract for manufacture, sale and purchase of the goods in question. (5) That the parties contracted with reference to the existence of the Navy contract, and that the penalties of default were expressly and specifically within the contemplation of the parties with respect to their own agreement. (6) That the defendants breached the contract. (7) That the damages flowing from said breach are comprised of the difference between the contract price and the fair market value of the merchandise at the time when performance was due; plus the consequential damages which were within the contemplation of the parties; together with the cost of merchandise and money advanced by the complainant, and with interest at the rate of six percent (6%) from the date of the breach. * * * In the light of all the proof, and in view of the fact that the complainant thereunder is standing upon the offer of March 27th and all of the acts and conversations subsequent thereto, the first issue before the Court is: What was the relation of the parties as to the offer of March 27, 1941."

Plaintiff submits further that "The position of the defendants changed materially at the close of all the testimony. They admitted that a contract did exist between the parties, but they denied that it was the specific contract alleged by the complainant. They maintained that there was a collateral, verbal agreement to manufacture an experimental portion of the goods required to be delivered by the complainant under and by reason of the Navy contract. They contended, however, that this was a separate agreement and that performance related to it, rather than to the entire order which the complainant contends was accepted by the defendants."

Defendants in their brief (pp. 1, 2) say: "As we analyze the present contentions of plaintiff, the issues therefore are: (1) Did Deutsch's offer of March 27, 1941, result in a contract? (a) by express acceptance, or (b) by acceptance implied from the subsequent acts of defendants, or (c) by estoppel. (2) If a contractual relationship

did result, was it enforceable by reason of the provisions of the Statute of Frauds? (3) If an enforceable contract resulted, what damage does the evidence show plaintiff sustained?"

It is not disputed that if an enforceable contract was in existence at any time prior to July 9th, as relates to the order of March 27th, 1941, that defendants were guilty of a breach thereof and are liable for the damages, if any, proximately suffered by plaintiff resulting therefrom.

As is not unusual in cases of this character, there is a conflict in the testimony as given by, and on behalf of, the respective parties. In some instances and as to some matters the conflict is direct and sharp. There are some discrepancies in the testimony and some failures to recollect distinctly exact dates, conversations at given times and sequence of events. To some extent this is, no doubt, attributable to the fact that the occurrences themselves took place approximately seven years before the trial of the case.

Counsel for the respective parties have argued at length, in their briefs, the question of the "credibility of witnesses," citing and quoting from the record and exhibits.

It is the duty of the court to reconcile this testimony wherever this can be properly done and to give to the testimony of each witness such weight as the court deems it properly deserves, keeping in mind the applicable rules of law. Where, as here, issues of fact are raised the court, in the absence of a jury, is bound to follow the same "instructions" it would give in a charge to the jury, were one present. This, the court has done, in the instant case. In arriving at its conclusions as to the credibility of witnesses and the weight to be given to their testimony, the court has been materially aided by the written and documentary evidence offered and admitted as exhibits in the case.

The facts as the court finds them to be upon the record in this case are sufficiently stated by the court in its Findings of Fact hereinafter set forth and made a part of this decision along with the court's Conclusions of Law. It would serve no useful purpose, therefore, to review them here.

For present purposes the court deems it sufficient to say that it is of the opinion and so finds that plaintiff's order or offer to purchase of March 27, 1941, did result in a contract with defendants; that this result was brought about, as claimed by plaintiff, by a specific and express assent by defendants to plaintiff's offer to purchase; that there was an assent as a matter of law and that defendants by their conduct and assent are estopped to deny the existence of the contract for the manufacture, sale and purchase of the brushes in question herein.

The court is further of the opinion and so finds from all the evidence in the case that the parties contracted with reference to the existence of the Navy contract and that the penalties of default were within the contemplation of the parties with respect to their own contract; that the contract is enforceable and does not fall within the Statute of Frauds and that defendants breached the contract to plaintiff's damage.

The burden of proof was upon the plaintiff to prove his case and each and every essential element thereof by a preponderance of the evidence. In the view of the court, plaintiff has sustained this burden.

The court agrees with the conclusion of plaintiff as expressed on p. 40 of his reply brief that: It does "not see how the events and correspondence between the parties can be explained or understood upon any basis other than that a contract arose between the parties upon the basis of the order of March 27, 1941."

The rights and obligations of the parties became fixed as of the date of assent by defendants to the offer of March 27, 1941. This is not disputed in the event the court finds and rules (as it now has) that there was an acceptance of that offer.

In its Notice and Demand for Payment (Exhibit 70) the Navy requested plaintiff to forward his check in the sum of $33,736.-83, being the amount of "excess cost" to the Government due to plaintiff's "Inability to Complete Deliveries."

In his brief (p. 53) plaintiff states that "there is obviously an error in the Navy's calculation by reference to complainant's exhibits 74 and 76 (not offered in evidence but read into the record by Deutsch)" and plaintiff states that because of this "error" plaintiff will "in no event" be liable for two items which total $2,043.20, which sum, therefore, "should be deducted from the sum of $33,736.83," leaving, plaintiff asserts, the amount which should have been stated in exhibit 70, as $31,693.63.

In his brief (p. 54) plaintiff says: "Summing it up therefore, and deducting the two items erroneously included in the Navy deficiency assessment, the complainant's liability to the Navy is $31,693.63, which figure is obtained by eliminating from the deficiency assessment the two items erroneously included therein."

Plaintiff now claims, therefore, that he is entitled to damages, (being alleged compensatory damages) on his first cause of action in the sum of $31,693.63, and in addition thereto the sum of $1,372.32, which sum he alleges represents the difference between the merchandise and cash advanced to the defendants by plaintiff and the cost of the merchandise actually delivered under the contract in issue.

Plaintiff now also claims that he is entitled on his first cause of action to a like sum of $31,693.63 as "special damages."

Sometime after the final submission of the case, to-wit, on July 9, 1948, plaintiff filed a "motion for leave to amend amended complaint" stating therein that the amendment was sought "to conform to the proof insofar as affects the prayers for damages under the first and second causes of action."

The proffered amendment reads as follows:

"1. By striking from the amended complaint amended paragraph "19" thereof in its entirety, and for leave to substitute in lieu thereof the following paragraph 19:

(19) That by reason of the premises the plaintiff has been damaged in the sum of $64,759.58, which sum is comprised of the following:

(a) Compensatory damages in the sum of $31,693.63 computed upon the basis of the difference between the contract price of the merchandise required to be delivered but not actually delivered by the defendants under their contract with the complainant and,

(b) Special damages in the sum of $31,-693.63, which sum represents the liability of the complainant to the United States Government by reason of his default under his agreement with the Government arising out of the breach of the contract at issue,

(c) Plus the sum of $1,372.32, which sum represents the difference between the merchandise and cash advanced to the defendants by the complainant, and the cost of the merchandise actually delivered under and by reason of the contract in issue,

(d) Plus interest on the total amount as aforementioned at the rate of six percent per annum from the date of the breach of the agreement herein, no part of which sums have been paid, although duly demanded.

2. Complainant further moves for leave to amend the amended complaint herein by striking out paragraph "25" thereof and substituting in lieu thereof the following paragraph 25:

(25) That by reason of the premises the plaintiff has been damaged in the sum of $1,372.32, which sum is represented by the difference between the advances of cash and merchandise made to the defendants and the cost of the merchandise actually delivered by the defendants upon the prices agreed to be paid."

Defendants submit (1) that plaintiff is not entitled to any damages whatsoever; (2) that (Br. p. 49) "if plaintiff has proved a contract in the case at bar, he can only recover nominal damages on his first cause of action;" (3) that "even if we are incorrect in this, by reason of Deutsch's failure to minimize his damage by accepting defendants' offer of September, his recovery must be limited to a sum not exceeding $3,682.24;" (4) that because of the Navy "error" the (Br. p. 42) "amount would be $29,684.25 and not $31,693.63" as claimed (by plaintiff): and (5) that under any circumstances, plaintiff is not entitled to so-called "special damages" and consequently that the motion filed July 9, 1948 for leave

to amend the amended complaint, should be overruled, and leave to file the proffered amendment denied.

Taking up first, the last contention of defendants, the court agrees with defendants' assertions with respect to "special damages" and finds and rules that under the facts of the instant case, plaintiff is not entitled to recover "special damages."

The record shows that under the order or offer to purchase of March 27, 1941, plaintiff was to receive no profit. As stated by defendants (Br. p. 42): "Counsel (for plaintiff) now seek to recover for the breach of an alleged contract under which their client would admittedly have made no profit had it been fulfilled, not only the amount the government has claimed Deutsch is indebted to it for damages for his breach of the government contract, but a like sum in addition."

Plaintiff in the instant case is entitled to recover compensatory damages and compensatory damages only. Plaintiff having been damaged by defendants" breach, is entitled, so far as it is possible to do so by a monetary award, to be placed in the position he would have been, had the contract been performed.

It is admitted that plaintiff's order or offer of March 27, 1941, was at (substantially) the price plaintiff was to receive from the government upon performance of his contract with the government and that plaintiff would have made no profit.

Plaintiff says that the government has made a claim against him in the sum of $31,693.63. If plaintiff is forced to pay this amount, then as defendants point out, this amount is his only loss and plaintiff would be made whole by being reimbursed for this liability. By his tendered amendment, plaintiff now seeks an additional identical sum on a contract which would have netted him no profit had it been performed.

The rule applicable here is stated in the case of Blair v. U. S., 8. Cir., 150 F.2d 676, 678, as follows: "The fundamental basis for an award of damages for breach of contract is just compensation for losses necessarily flowing from the breach. * * * As pointed out in the original opinion, a party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have been in had the contract been performed."

Defendants assert that this principle (set forth in the Blair case) has not been changed by the provisions of the Uniform Sales Act. The court agrees with defendants' assertion as apparently plaintiff does also, for he states in his brief (p. 55) that: "The true measure of damages is fixed by statute (the Sales Act) which provides, in substance, that the intent of the law is to place the complainant, by an award of damages, in the same position that he would have been in, had the contract been performed."

Plaintiff's motion to amend (filed July 9, 1948) is, therefore, sustained in part and overruled in part.

(1) With reference to the First Cause of Action, it is sustained as to subparagraphs (a), (c) and (d) of paragraph 19 and leave is granted to plaintiff to amend his amended complaint herein by striking from the amended complaint, paragraph 19 thereof in its entirety and substituting in lieu thereof a paragraph 19 as follows:

19. That by reason of the premises the plaintiff has been damaged in the sum of $31,693.63, which sum is comprised of the following: (a) Compensatory damages in the sum of $31,693.63 computed upon the basis of the difference between the contract price of the merchandise required to be delivered but not actually delivered by the defendants under their contract with the complainant, (c) Plus the sum of $1,372.32, which sum represents the difference between the merchandise and cash advanced to the defendants by the complainant, and the cost of the merchandise actually delivered under and by reason of the contract in issue, (d) Plus interest on the total amount as afore-mentioned at the rate of six percent per annum from the date of the breach of the agreement herein, no part of which sums have been paid, although duly demanded.

It is overruled as to subparagraph (b) of the proferred paragraph 19 and leave

o amend as set forth in subparagraph (b)
s denied.

(2) As to the Second Cause of Action
he motion is sustained and leave is grant-
ed to amend the amended complaint in the
respects and in the language as in the
motion set forth.

The only question, therefore, is what is
the proper measure of plaintiff's damages;
what amount will give to plaintiff the bene-
fit he would have received under the con-
tract.

The court, having found and concluded
that the order or offer of March 27, 1941,
resulted in a contract and that defendants
by their letter of rejection dated July 9,
1941, breached that contract to plaintiff's
damage, further finds and holds that plain-
tiff is entitled to recover from defendants
as (compensatory) damages on his first
cause of action, the sum of thirty-one
thousand, six hundred and ninety three
dollars and sixty-three cents, ($31,693.63)
and in addition thereto, the further sum
of thirteen hundred and seventy-two dol-
lars and thirty-two cents ($1372.32) or the
total sum of thirty-three thousand and six-
ty-five dollars and ninety-five cents ($33,-
065.95) together with interest thereon,
from July 9, 1941, at the rate of six per-
cent per annum, as prayed for.

Having found that plaintiff is entitled
to recover on his first cause of action, the
court finds that in accordance with the
stipulation (filed May 12, 1948, and the
statement of plaintiff in his brief, both
herein before referred to) there is nothing
further due plaintiff on his second cause of
action.

Upon a consideration of the whole of
the record, the briefs and arguments of
counsel and the applicable law, the court
has arrived at the following:

Findings of Fact.

1. Plaintiff is and at the time of the
institution of this suit was a citizen and
resident of the State of New York.

2. All of the defendants are and at the
time this suit was instituted, were resi-
dents and citizens of the State of Ohio,
with their principal office and place of
business at New Knoxville, Ohio.

3. Plaintiff at the times alleged in the
petition was engaged in the business of
jobbing janitor and similar supplies includ-
ing various types of brushes.

4. Defendants, during the period cov-
ered by the present litigation were and
still are engaged in the manufacture and
sale of brushes and brooms.

5. The business known as The Hoge
Brush Company was started in 1940, and,
thereafter, during the years 1940 and 1941
was run under the general supervision of
the defendants, Herman Hoge, Arthur
Hoge, Joel Hoge, Gus Hoge and Oliver
Hoge, by one Carl Werheim as manager.

6. Defendant, The Hoge Lumber Com-
pany is an Ohio corporation and by action
of its board of directors has assumed the
payment of any judgment which may be
rendered in this action against the busi-
ness known as The Hoge Brush Company
or the individual defendants.

7. In 1940 defendants appointed Im-
perial Manufacturing and Trading Com-
pany, (located in New York City) which
was wholly owned by William E. Epstein
of New York, as their sole and exclusive
sales representative in New York. Im-
perial Manufacturing and Trading Com-
pany (Epstein) so acted, at least, until
some time after August, 1941.

8. Epstein was authorized to and did
quote prices upon merchandise manufac-
tured and sold by defendants. He solicited
orders from plaintiff upon prices quoted
by defendants.

9. There appears to have been an ar-
rangement between themselves, whereby
neither the Imperial Manufacturing and
Trading Company nor William E. Epstein
were authorized to accept orders on behalf
of The Hoge Brush Company but all orders
taken by it or him were subject to confir-
mation by The Hoge Brush Company at its
home office in New Knoxville, Ohio. How-
ever, The Hoge Brush Company never ac-
tually confirmed such orders except in the
manner set forth in Finding No. 10.

10. In practice, The Hoge Brush Com-
pany did not formally confirm orders sub-
mitted to it by the Imperial Manufactur-
ing & Trading Company or Epstein by

any writing. Its acceptance of such orders was indicated only by its subsequent shipment of the goods so ordered; it would, however, from time to time reject orders of customers submitted to it by the Imperial Manufacturing & Trading Company, including some orders received from plaintiff.

11. In January, 1941, the Navy Department of the United States Government advertised for bids, to be opened on March 7, 1941, for the furnishing to it of the following floor sweeping brushes:

| Item | Length of Block | Number |
|------|-----------------|--------|
| 1 | 14″ | 300 |
| 21 | 14″ | 13,000 |
| 22 | 24″ | 1,100 |
| 15 | 14″ | 1,000 |
| 20a | 14″ | 29,000 |
| 21a | 24″ | 1,404 |
| 3b | 14″ | 220 |
| | Total | 46,024 |

And for the furnishing to it of the following deck scrubbing brushes:

| Item | Number |
|------|--------|
| 16 | 20,000 |
| 15a | 4,000 |
| 13b | 500 |
| 16b | 16,512 |
| 26 | 350 |
| Total | 41,362 |

12. The brushes referred to in Finding No. 11 were not available on the open market, but were required to be specially manufactured in accordance with government specifications.

13. In January, 1941, plaintiff concluded to, and he informed Epstein that he intended to, make a bid on a contract for the sale of the brushes, referred to in Finding No. 11, to the United States Government.

14. Plaintiff conferred with Epstein regarding the prices at which defendants would manufacture and sell the brushes referred to in Finding No. 11, and Epstein quoted prices which were embodied in the bid (later referred to in Finding No. 15) made by plaintiff.

15. Thereafter, plaintiff submitted a bid to the Navy Department pursuant to its advertisement, by the terms of which plaintiff offered to sell to the Navy Department, among others, the items referred to in Finding No. 11 at the following prices:

Floor Sweeping Brushes:

| Item | Price |
|------|-------|
| 1 | $ 240.00 |
| 21 | 10,400.00 |
| 22 | 1,485.00 |
| 15 | 800.00 |
| 20a | 23,203.20 |
| 21a | 1,895.40 |
| 3b | 187.00 |
| Total | $38,210.60 |

Deck Scrubbing Brushes:

| Item | Price |
|------|-------|
| 16 | $5,600.00 |
| 15a | 1,120.00 |
| 13b | 140.00 |
| 16b | 4,623.36 |
| 26 | 98.00 |
| Total | $11,581.36 |

16. The prices embodied in plaintiff's bid (referred to in Finding No. 15) were substantially those which were quoted by Epstein, except that plaintiff was to have received a ten (10%) percent discount which was to have been his margin of profit.

17. Thereafter, on March 7, 1941, the bids submitted were opened by the Navy Department, and on or about March 8, 1941, plaintiff and The Hoge Brush Company each received notice that plaintiff was the low bidder for the contract.

18. On or about March 11, 1941, plaintiff placed an order for the brushes required by his contract with the Navy Department with the Imperial Manufacturing & Trading Company (Epstein) at the prices he had bid to the government less a discount of 10%, conditioned upon receipt of the formal award by the government.

19. On or about March 13, 1941, prior to the receipt by plaintiff of the formal award, Werheim went to New York and

there met and conferred with Epstein and plaintiff. At that time Werheim notified plaintiff that defendants would not manufacture and sell the brushes unless the discounts of ten (10%) percent were excluded.

20. On March 26, 1941, the formal contract (exhibit 31) between plaintiff and the Navy Department for the furnishing by plaintiff of the floor brushes and deck scrubs (referred to in Findings Nos. 11 and 15) to the Navy was executed. By its terms plaintiff was bound to deliver the merchandise referred to in the contract, under penalty that the government, in the event of default, would purchase against the contract upon the open market.

21. On March 27, 1941, plaintiff placed, through Imperial Manufacturing & Trading Company (Epstein), a second order or offer to purchase (exhibit 33) for the same brushes referred to in Findings No. 11, 15 and 20 at substantially the same prices quoted in the order of March 11, 1941, (Finding No. 18) except that there was not included any provision for discounts.

22. The prices plaintiff agreed to pay defendants under the order (exhibit 33) of March 27, 1941 (referred to in Finding No. 21), were as follows: For deck scrub brushes, Total $11,581.36. (This is exactly the same amount plaintiff was to receive from the Navy for the deck scrub brushes under the Navy contract exhibit 31). For the floor sweeping brushes, Total $38,074.40. (This is $136.20 less than the amount plaintiff was to receive from the Navy for floor sweeping brushes under the Navy contract Exhibit 31).

23. The order of March 27, 1941, referred to in Finding No. 21, made specific reference to the Navy contract, Exhibit No. 31. It embodied all of the terms and conditions of that contract (exhibit 31) including the specifications which were a part thereof, and, in accordance with the Navy contract, requested that the lots of 300 and 220 floor sweeping brushes be prepared first for inspection. It was transmitted by Epstein on March 28, 1941, to the home office of defendants at New Knoxville, Ohio, and was received and retained by them until July 9, 1941.

24. On April 10, 1941, Werheim had a further conference with Epstein and plaintiff in New York. At that time it was agreed by the parties that plaintiff would assist defendants by (plaintiff) purchasing raw materials and advancing part payments required for completion of performance under the order of March 27, 1941 (referred to in Finding No. 21).

25. On April 10, 1941 plaintiff and Werheim together visited suppliers of various raw materials in an effort to find the required raw materials, but they were able to obtain only substitute fibers. Plaintiff, at the request of defendants (per Werheim) arranged for the purchase, at the cost of plaintiff, of the substitute materials, contingent upon the Navy's approval thereof.

26. Plaintiff did, thereafter, obtain the approval by the Navy to a change in the specifications to permit the use of substitute material in the deck scrubbing brushes and some substitute material was then ordered by defendants and charged to plaintiff by the vendor thereof.

27. At the request of defendants, plaintiff, on May 21, 1941, and again on June 2, 1941 sent defendants a check for $1000.-00, making a total of $2000.00.

28. During May, 1941, defendants completed the first partial shipment required to be made under the Navy contract and plaintiff's order of March 27, 1941, (exhibit 33). Defendants requested plaintiff to arrange for an inspection of the brushes comprising this shipment and plaintiff did so.

29. Thereafter, an inspection of the brushes referred to in Finding No. 28 was made by the inspector of Naval Material, and on June 6, 1941, (exhibit 60) defendants notified plaintiff in writing that the inspector had approved the brushes and that they would be shipped. At the same time defendants advised plaintiff that the matter of price under the order of March 27, 1941, had not been settled.

30. Plaintiff immediately (letter June 9, 1941 Exhibit 61) advised defendants he would hold them to the prices quoted in the order of March 27, 1941.

42

31. About June 9, 1941, defendants shipped the brushes referred to in Finding No. 28 to the destinations outlined in the contract (exhibit 31) between plaintiff and the Navy and they were accepted by the Navy.

32. Thereafter and continuing until on or about June 26, 1941, plaintiff purchased additional raw material for completion of the Navy contract. This raw material was shipped to defendants and was received and accepted by defendants and used by them in the manufacture of deck scrubs. Some of it was later sold by defendants to other purchasers at a profit to defendants.

33. In June, 1941, (letter dated May 29, 1941) the Navy Department inquired (Exhibit 22) of plaintiff as to when it might expect delivery under and in accordance with its contract (exhibit 31). Plaintiff sent this inquiry to defendants. On June 20, 1941, defendants responded in writing (on exhibit 22) to the Navy, that their failure to deliver was "on account of strike at Seneca Wire and Mfg. Co., we have run out of wire and cannot proceed" * * *.

34. On July 9, 1941, defendants notified plaintiff in writing (exhibit 224) that they would not proceed further under the order of March 27, 1941, advising plaintiff that he had "no contract with us for brushes for the Navy." In their letter of July 9, 1941 (exhibit 224) defendants further stated that " * * * all your orders sent to us by the Imperial Mfg. and Trading Co., are refused. We are notifying the Navy Department and giving them our reasons and advising we have no such agreement with you and will not fill the orders unless you make a satisfactory agreement."

35. From July 7, 1941 and continuing until approximately the latter part of September, 1941, there were continuing negotiations and discussions between the parties looking toward completion of performance. These negotiations were concluded without any agreement being reached.

36. Following the termination of the negotiations and discussions referred to in Finding No. 35, plaintiff, in response to a telegram (exhibit 68) dated December 6, 1941, from the Navy, notified the Navy (exhibit 69) that "we are obliged to default on the balance of contract due to default of our subcontractor, Hoge Brush Company, New Knoxville, Ohio" * * *. Promptly, thereafter, the Navy readvertised the brushes. The brushes were required to be manufactured as they were not available on the open market.

37. The lowest rebids, upon the brushes (required to be manufactured by the defendants) were $31,693.63 in excess of the prices contained in the order of March 27, 1941 (exhibit 33).

38. The rebids constituted the fair market price of the brushes at the time and place when and where performance was due.

39. On December 31, 1941, the Navy wrote plaintiff (exhibit 70) as follows: "In view of your inability to complete deliveries under the subject contract, award is being made under Item 3 of Lot 759, Items 6, 13b, 16b and 2c of Lot 768, and Items 21, 22, 15, 20a, 21a and 3b of Lot 771 for purchase as a charge to your account at an excess cost of $33,736.83. It is requested that you forward a check to this office, made payable to the Treasurer of the United States, in the amount of this excess cost."

40. The Navy erred in its reoffer in respect of two lots of brushes which had been shipped and received by it, but were reawarded. That error represents a difference of $2,043.20. The correct amount of the Navy's demand upon the plaintiff by way of deficiency assessment should have been $31,693.63. Plaintiff as yet has paid no part of the deficiency assessment.

41. The books of defendants reflected the sum of $938.38 due and owing to plaintiff at the time of the filing of the complaint herein (April 29, 1947). In their answer (filed June 18, 1947) defendants "admit such obligation in favor of plaintiff and offer and tender payment thereof" * * *. No part of this balance had ever been offered or tendered to plaintiff prior thereto.

42. The balance (of $938.38 referred to in Finding No. 41) includes a charge for brushes shipped in accordance with the

agreement between the parties. It also reflects the part payments made by plaintiff in goods and money, (referred to in Findings No. 24, 26, 27 and 32).

43. The correct balance due and owing to plaintiff by defendants (at the time the complaint was filed) was (and is) $1,372.32.

## Conclusions of Law.

1. The prices quoted by Epstein during the latter part of January, 1941, constituted an offer to plaintiff by defendants.

2. Plaintiff accepted such offer, conditioned upon being awarded the contract, and an executory contract came into existence between the parties.

3. The rejection of the order by Werheim, on or about March 13, 1941 (Finding No. 19) constituted an attempted rescission of the executory contract.

4. Plaintiff, by is order of March 27, 1941, (exhibit 33) assented to such rescission.

5. The order of March 27, 1941 constituted a counter-offer, by the original offeree upon the terms and conditions contained therein.

6. The counter-offer, by reference, incorporated the terms and conditions of the agreement between the United States and plaintiff.

7. The parties contemplated all of the duties and obligations of the Navy contract (exhibit 31) in their negotiations between themselves.

8. Defendants had actual knowledge of the terms and conditions of the Navy contract.

9. The terms of the agreement between the parties was directly dependent upon those embodied in the Navy contract and the parties contracted with direct reference thereto.

10. Defendants accepted plaintiff's counter-offer of March 27, 1941, expressly on or about April 10, 1941, (Findings No. 24, 25 and 26) and the rights, duties and obligations of the parties became fixed at least as of that date.

11. The purchase by plaintiff of raw material which was sent to and accepted by defendants, constituted an acceptance of plaintiff's counter-offer as a matter of law.

12. The conduct of the parties with reference to obtaining changes in the Navy specifications constituted an act of performance and implied an acceptance of plaintiff's offer or order of March 27, 1941, as a matter of law.

13. The check for $1,000.00 sent by plaintiff to defendants under date of May 21, 1941, and accepted by them, constituted part payment under the order of March 27, 1941, and implied acceptance of that order.

14. The commencement of manufacture of the special goods by the defendants constituted an acceptance of the order referred to in Finding No. 21 as a matter of law.

15. The shipment on or about June 9, 1941, by defendants of part of the order of March 27, 1941, to the Navy and the acceptance by it of the brushes manufactured and shipped by defendants constituted an implied acceptance of the order of March 27, 1941.

16. The check for $1,000.00 sent by plaintiff to defendants under date of June 2, 1941, and accepted by them, constituted additional part payment under the order of March 27, 1941, and implied acceptance of that order.

17. The receipt by defendants of additional raw materials to be used in the manufacture of brushes under the order of March 27, 1941, which materials were purchased by plaintiff and retained and used by defendants, implied acceptance of the order.

18. Under the facts disclosed by the record in the instant case, defendants are estopped to deny the existence of a contract founded upon plaintiff's order of March 27, 1941.

19. Defendants breached their contract with plaintiff by their letter of rejection under date of July 9, 1941.

20. Defendants are liable for the damages proximately resulting to plaintiff by reason of the breach referred to in Conclusion No. 19.

21. Plaintiff obtained an extension of the time for performance of the contract

during the period when the parties were seeking to negotiate completion of performance.

22. The prices at which other bidders offered to complete performance upon the occasion of the readvertisement by the Navy Department, constitute the fair market price of the brushes required to be delivered under the agreement between the parties herein at the time and place when and where performance was due.

23. Plaintiff is entitled to recover from defendants herein (on his first cause of action) as compensatory damages the sum of thirty-one thousand, six hundred and ninety-three dollars and sixty-three cents ($31,693.63).

24. Plaintiff is not entitled to recover "special damages."

25. Defendants are entitled, under the agreement, to set off the contract price of the goods delivered against the advances of merchandise and money made by plaintiff. Plaintiff, in addition to compensatory damages, is entitled to recover (on his first cause of action) the difference which is the sum of one thousand, three hundred and seventy-two dollars and thirty-two cents, ($1,372.32.)

26. The contract in question was made in Ohio and is governed by the Ohio Sales Act.

27. The provisions of the Statute of Frauds of the State of Ohio are inapplicable because (a) of the part payments made and accepted and (b) the various writings and documents fully comply with the requirements of the Statute of Frauds insofar as they constitute a memorandum sufficient to establish the contract.

28. The contract does not fall within the provisions of the Statute of Frauds and it is legal and enforceable.

29. Plaintiff's objection to the writings, exhibits and all testimony relating to discussions and occurrences between the parties herein, or their authorized representatives, after July 9, 1941, is overruled and plaintiff's motion to strike all such writings, exhibits and testimony is here and now denied.

30. Having found that plaintiff is entitled to recover on his first cause of action, plaintiff, (under the stipulation of counsel) is not entitled to any recovery on his second cause of action.

31. Plaintiff's third cause of action has heretofore been dismissed.

32. Plaintiff is entitled to recover from defendants herein, on his first cause of action, the total sum of thirty-three thousand and sixty-five dollars and ninety-five cents ($33,065.95) with interest thereon at the rate of six (6%) percent per annum from July 9, 1941.

Counsel may prepare and submit a judgment entry in accordance with the foregoing decision, including the court's Findings of Fact and Conclusions of Law.