Francine SUTTON, et al., Plaintiffs,

v.

**CLEVELAND BOARD OF EDUCATION, et al., Defendants.**

Civ. A. No. C86–3307.

United States District Court, N.D. Ohio, E.D.

July 31, 1989.

Robert M. Fertel, Sanford J. Berger, Berger & Gertel, Cleveland, Ohio, for plaintiffs.

James G. Wyman, Cleveland Bd. of Educ., Law Dept., Cleveland, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, Judge.

Francine Sutton, Helen Ellis, and Gus Swanson are three bus drivers ("the drivers") who, in 1986, were put on "involuntary administrative leave" by the Cleveland Board of Education ("the Board") because they had previously been convicted of felonies. The drivers sue under 42 U.S.C. § 1983 claiming that because the Board failed to follow proper procedures, they were denied their rights to due process as guaranteed by the fourteenth amendment to the United States Constitution. In addition, they claim that the Board breached the applicable collective bargaining agreement ("the Agreement") by suspending them improperly. The Court has pendent jurisdiction over this state law claim.

In a Memorandum and Order entered June 16, 1988, the Court found that the drivers' claim is not barred for failure to exhaust administrative remedies. Subsequently, the drivers moved for summary judgment and the Board moved for reconsideration. At a pre-trial conference in chambers, both sides stipulated to the relevant facts.

As explained below, the Court finds that the drivers were not denied due process. It affirms its prior ruling that the grievance procedure at issue here fails to comport with the clear requirements of Ohio law, and finds that the Board did breach the Agreement. Accordingly, the drivers are entitled to back pay for the time they were placed on administrative leave.

### I

The facts in this case have been stipulated to as follows: The plaintiff drivers all work for the Board and are affiliated with the Truck Drivers Union, Local 407, International Brotherhood of Teamsters ("the Union"). The Union is certified by the state and has entered into a collective bargaining agreement with the Board; this Agreement covers the three drivers.

In August 1985, the Board's Chief of Transportation, Bob Hamed, became aware that various of its bus drivers had previously been convicted of felonies. The Board placed each driver on administrative leave on August 23, 1985, and pre-termination hearings were scheduled for these

plaintiffs for August 30. The Union was notified of the hearings and a Union representative was present at the hearings. As agreed at the pre-trial conference, the Board has provided the Court with audio tape recordings of the pre-administrative leave hearings for each of the plaintiff drivers. After these hearings, all the drivers with felony convictions were put on involuntary administrative leave for the 1985–86 school year. According to the affidavit of Richard M. Humphreys, the Board's legal counsel, all of the drivers were told that they would be reinstated if and when their criminal records were expunged.

After these events, the Union filed a grievance on behalf of the drivers and other similarly situated employees. The grievance proceeded through the first three steps of the grievance procedure, at which point a tentative settlement was reached. After a short disagreement, a second settlement was reached which would not be binding on those employees who did not agree to its terms. Although none of the present plaintiff drivers agreed to the settlement, they were all reinstated. The Union then stated its intention to bring the grievance before an arbitrator. The drivers' counsel notified both the Board and the Union that the drivers did not consent to the arbitration, and proceeded to file this suit.

## II

The following issues are now before this Court:

(A) Did the drivers' pre-administrative leave hearings comport with constitutional standards of due process?

(B) Is the Board's grievance procedure so defective that the drivers' refusal to follow it does not act as a bar to this action?

(C) Did the Board breach the Agreement?

(D) If it did, are the drivers entitled to damages?

## A

■ The state statutes governing public employees require that Cleveland Board of Education bus drivers be disciplined and fired only for cause. Ohio Rev.Code §§ 124.11, 124.34. Therefore, the drivers, as public employees with a reasonable expectation of continued employment, have a property interest in their jobs. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the United States Supreme Court held that due process requires that public employees be afforded "some kind of hearing" before adverse employment action is taken. *Id.* at 533, 105 S.Ct. at 1489. The Court ruled that the "essential requirements" for such "pre-termination hearings" are notice and an opportunity to respond. *Id.* at 546, 105 S.Ct. at 1495 (citations omitted). The Court described "opportunity to respond" as follows:

[S]ome opportunity for the employee to present his side of the case is recurringly of obvious value in reaching an accurate decision. Dismissals for cause will often involve factual disputes. *Even when the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect.*

*Id.* at 543, 105 S.Ct. at 1494 (citations omitted) (emphasis added). Although *Loudermill* does not require a full evidentiary hearing, employees should be allowed to tell their side of the story. *Id.* at 546, 105 S.Ct. at 1495.

■ The drivers allege herein that they were not afforded proper *Loudermill* pre-termination hearings. Conceding that hearings took place, they state that the agenda was limited to whether the Board's records were correct, *i.e.* whether each of the drivers had in fact been convicted of a felony. The drivers argue that they were not given an opportunity to present reasons why they should not be suspended despite their convictions.

After reviewing the pre-administrative leave audio tapes, the Court finds that the hearings all followed a similar format. First, a Board hearing officer informed the driver that the Board had received evidence from the Department of Transportation which might affect the driver's employment with the Cleveland Public Schools. A Union representative then challenged the Board's authority to conduct the hearings, inquired into the source of the evidence, and asked whether the evidence was related to the driver's current employment or to a pending summary judgment motion. Next, a Transportation Department representative read the evidence. The Board hearing officer then asked the driver to attest to the accuracy of the evidence and to present additional or contrary evidence. In each case, the driver responded and presented additional evidence.

Applying the *Loudermill* standard, the Court finds that this procedure provided ample notice not only of the pending charges, but also of the evidence relied upon. In each case, the driver attested to the accuracy of the evidence. Further, despite their assertions to the contrary, all of the drivers were invited to, and did, provide reasons why they considered their past convictions irrelevant to their present employment. Since each driver was given notice and an opportunity to respond, the Court finds that the pre-administrative leave hearings comported with the constitutional due process standards of *Loudermill*.

### B

■ The second issue before this Court is whether or not the Board's post-termination grievance procedure, as contained in the Agreement, sufficiently comports with Ohio law so that decisions reached through this procedure are not reviewable by the federal courts. In its June 16, 1988 order, this Court found that the post-termination grievance procedure, allowing only limited access to final arbitration, was defective. Accordingly, the Court held that this faulty procedure did not prevent the present plaintiff drivers from proceeding in this Court.

In summary, the Court reasoned as follows. Until 1983, the terms of employment for employees of the State of Ohio were governed by the Civil Service Act, codified in Chapter 124 of the Ohio Revised Code ("the Act"). That Act required that administrative remedies permit final recourse to a neutral adjudicator. Ohio Rev.Code § 124.34. In 1983, however, the Ohio legislature passed Section 4117.10(A) which allows parties to replace the strong protection afforded civil service employees under Ohio Rev.Code § 124.34 with procedures of their own. As explained in its June 16, 1988 Order, however, this Court found that the Ohio legislature intended to ensure a similar level of protection for public employees when any such new procedures were devised.

As allowed by Chapter 4117, the Board entered into a collective bargaining agreement with the Union which established a three-step procedure for resolving employee grievances. If the dispute remains unresolved after the first two steps, the Union may refer the grievance to a Grievance Panel made up of three Union representatives and three Board representatives. It is only when and if this panel is equally divided that the grievance may be submitted to final and binding arbitration. This Court then held that such limited access to final arbitration withdraws certain of the procedural protections afforded by Ohio Rev.Code § 124.34, and thus does not comply with the legislative intent of Ohio Rev.Code § 4117.10(A).

Urging reconsideration of this holding, and quoting *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, ——, 108 S.Ct. 1877, 1884, 100 L.Ed.2d 410 (1988), the Board argues that all collective bargaining agreements lie exclusively within the "arbitral realm." In *Lingle*, the Supreme Court held that if application of a state right or remedy "requires the interpretation of a collective-bargaining agreement," *id.* 108 S.Ct. at 1878, then that state law right is preempted by § 301 of the Labor Management Relations Act of 1947. The Board argues that the term "final and binding" should be interpreted in the griev-

ance procedure, or by the arbitrator, not by the courts.

This Court finds that *Lingle* and the other United States Supreme Court cases cited by the parties are inapplicable. The present case involves Ohio employees whose employment is governed by Ohio law. To resolve the issues presented, this Court need only interpret the relevant state statutes—Ohio Rev.Code sections 4117.-10(A) and 124.34. Thus, the various federal labor law arguments do not persuade the Court to change its prior ruling.

The Board also argues that in *White v. Cleveland Bd. of Education*, No. 87–4019 (6th Cir. Nov. 3, 1988), [861 F.2d 722 (table)] the Sixth Circuit Court of Appeals rejected a similar attempt to challenge the Board's arbitration provision for failure to comport with due process standards. Although *White* also involves school bus drivers who were terminated by the Board, and whose grievances were processed under the same procedures as are at issue here, the present case is distinguishable. In *White*, the drivers had voluntarily submitted their dispute to the grievance panel. The panel divided equally, and the drivers were then permitted under the Agreement to bring their grievance before an arbitrator. The Union then failed to do so, however, and the Court found that this failure precluded the drivers from bringing a federal action. *Id.* at 7. The Court reasoned that, having voluntarily submitted their dispute to the grievance panel, and having received the opportunity to go to arbitration, the drivers could not then retrospectively argue that the procedure provided insufficient recourse to a neutral adjudicator.

In contrast, the present dispute did not reach a final resolution by the grievance panel. As stipulated, two tentative settlements were reached between the Union and the Board prior to the panel's decision. Although the drivers did not agree to these settlements, the panel deliberation ended with the settlement agreed to by the rest of the drivers. Although the union was willing to continue with the grievance procedure, the present plaintiff drivers did not

consent. Instead, they objected at that point on the ground that the procedure was deficient.

■ This Court is bound by the Sixth Circuit's determination that drivers who voluntarily avail themselves of grievance mechanisms waive their right to challenge the statutory adequacy of those mechanisms. However, in this case, the drivers have from the outset challenged the validity of the grievance process. Therefore, the Court finds it quite proper to hear their challenge. It is clear that government employees must have the right to sue for enforcement of the guarantees contained in Ohio Rev.Code § 124.34 and §§ 4117.10 *et seq.* If this Court were to force the present drivers to comply with the very procedures they wish to challenge, it would be requiring them to waive their facial challenge to the procedures.

Of course, the drivers might have acquired standing to challenge the procedures by virtue of an adverse panel decision at the conclusion of the third step of the grievance process. However, they might instead have become the "beneficiaries," like the plaintiffs in *White*, of a deadlocked panel allowing them access to arbitration. This result would have denied them standing to challenge the procedure. Given that these drivers wish to challenge the procedure, the Court finds that it would be improper to require the drivers to run this risk. Accordingly, after considering the supplemental trial briefs submitted by both sides, and the Sixth Circuit's ruling in *White*, the Court now reaffirms its previous holding that the Board's grievance procedure is defective insofar as it does not allow for final and binding arbitration in all instances.

Because the grievance procedure is statutorily defective, the Court finds that the drivers were not required to follow it. Their breach of contract claim is thus not barred for failure to exhaust available administrative remedies. Therefore, the Court will consider the drivers' motion for summary judgment on their breach of contract claim.

C

The drivers, on July 22, 1988, moved for summary judgment. Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

The nature of materials properly presented in a summary judgment pleading is set forth in Fed.R.Civ.P. 56(e):

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hasan v. CleveTrust Realty Investors, Inc.*, 729 F.2d 372 (6th Cir.1984). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil trials the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* 106 S.Ct. at 2512. Although "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient to defeat a summary judgment motion, the Court is not precluded from denying a summary judgment motion where it concludes that proceeding to trial is a better course. *Id.* at 2512, 2514.

█ In their memorandum in support of their motion for summary judgment, the drivers argue that they were, in essence, unlawfully suspended and thus are entitled to back pay for the time they were not permitted to work. The Board neither placed them on "administrative leave," as defined by Ohio Admin.Code 123:1–34–01, nor on "suspension" as defined by Ohio Rev.Code 124.34, nor on a "layoff" as defined by Ohio Rev.Code 124.321(B)(C) or (D). Administrative leave requires the *employee* to request such status; suspension may not continue longer than three days; and a layoff must be justified by such conditions as lack of funds, lack of work, or an abolishment of a position. None of these conditions occurred in this case. In effect, the Board suspended the drivers for an indefinite period, despite its use of the label "administrative leave." Because this action contravenes the explicit provisions of both the Agreement and the statute, and because the Board offered no persuasive rationale for disregarding the Agreement, this Court has no choice but to conclude that the Board did breach the Agreement. This conclusion raises the question whether the drivers are entitled to damages for that breach.

### D

■ Essentially, the drivers are seeking two types of monetary damages: a tort remedy for mental anguish and humiliation based on their due process claim, and a contract remedy for their unlawful suspension claim. Since the drivers have not prevailed on their due process claim, the tort remedy is not applicable. However, the drivers are entitled to compensation for the time they were unlawfully suspended.

Generally, in Ohio the remedy for a breach of contract is damages limited to "just compensation for losses necessarily flowing from the breach ... [A] party whose contract has been breached is not entitled to be placed in a better position because of the breach than he would have been in had the contract been performed." *Deutsch v. Hoge,* 94 F.Supp. 33 (N.D.Ohio 1949). The Court finds that the most appropriate means to compensate the drivers for their losses in this case is an award of back pay for the time they were unlawfully suspended.

The drivers are not entitled to interest on their back pay award, however. Recently, the Ohio Supreme Court held that adding prejudgment interest to a back pay award against a school board is not a proper remedy "absent a statute requiring such payment or an express contractual agreement to make such payment." *Brown v. Milton–Union Ex. Vil. Bd. of Education,* 40 Ohio St.3d 21, 28, 531 N.E.2d 1297, 1304 (1988) (citing *Beifuss v. Westerville Bd. of Education,* 37 Ohio St.3d 187, 525 N.E.2d 20 (1988)). In the present case, there is neither a statute nor an express agreement. Thus, the drivers are not entitled to prejudgment interest on the back pay award.

### III

In summary, the Court holds that the drivers were not denied due process in their pre-administrative leave hearings; their motion for summary judgment is denied as to this claim. The Court finds further that the Board's grievance procedure is defective, and failure of the plaintiff drivers to comply with it does not bar their breach of contract claim asserted herein; the Board's motion for reconsideration of this Court's June 1988 order is hereby denied. Finally, the Court has determined that the Board placed the drivers on administrative leave in violation of the collective bargaining agreement then in force between the Board and the drivers' union; the drivers' motion for summary judgment on its breach of contract claim is hereby granted. Therefore, the drivers are entitled to back pay, without interest, for the respective periods of time when they were not permitted to work.

Judgment is hereby entered for the plaintiffs. They shall file within twenty (20) days of the date of this order a petition, with supporting documentation, setting forth the back pay and benefits due and owing to each of the drivers. They may also brief the issue of whether they are entitled to attorneys' fees for prevailing only on their breach of contract claim.

IT IS SO ORDERED.